676 P.2d 241

**STATE of New Mexico,
Plaintiff-Appellee,**

v.

**Carl CASE, Defendant-Appellant.**

No. 14721.

Supreme Court of New Mexico.

Jan. 13, 1984.

See also, 100 N.M. 173, 667 P.2d 978.

Janet E. Clow, Chief Public Defender, David Stafford, Asst. Appellate Defender, Santa Fe, Gary C. Mitchell, Ruidoso, for defendant-appellant.

Paul Bardacke, Atty. Gen., William McEuen, Asst. Atty. Gen., Santa Fe, for defendant-appellee.

## OPINION

STOWERS, Justice.

Defendant Carl Case was tried by jury and convicted in the District Court of Eddy County for one count of first degree murder and one count of criminal sexual penetration in the first degree. The jury did not find the aggravating circumstances of NMSA 1978, subsection 31–20A–5(B) (Repl. Pamp.1981) that the murder was committed with intent to kill in the commission of criminal sexual penetration. The defendant was sentenced to life imprisonment for the conviction of first degree murder.

From this conviction the defendant appeals. We affirm.

The issues on appeal are:

1. Whether the trial court erred in denying a motion to appoint substitute counsel for the defendant and in failing to recuse itself.

2. Whether the trial court abused its discretion by refusing to admit evidence that the decedent was seen by friends several days after the murder allegedly occurred.

3. Whether the trial court abused its discretion by refusing to voir dire jurors or declare a mistrial due to alleged juror misconduct.

4. Whether the trial court erred in permitting "death qualification" of the jury.

The pertinent facts are as follows:

On January 30, 1982, the partially decomposed body of Nancy Mitchell was found near the Pecos River, Eddy County, New Mexico in the area known locally as Six-Mile Dam. A preliminary autopsy showed that Nancy Mitchell had bruises on her upper body and a fractured skull. There was testimony that on January 1, 1982, the defendant, Curtis Worley, Joseph Brown, and several others were overheard discussing forcing Nancy Mitchell to engage in sexual intercourse. There was further evidence that on this same date, Nancy Mitchell was seen with the defendant, Worley, and Brown in the area of Six-Mile Dam. Eyewitnesses testified that Worley struck the victim with his fist and that the defendant, Worley, and Brown then attacked the victim, disrobing her. It was also alleged that the victim was then sexually assaulted in turn by the defendant, Worley, and Brown. There was further testimony that the defendant was also seen striking the victim with an object described as possibly a pipe. One eyewitness testified that the defendant, Worley and Brown then dressed the unconscious victim, dragged her away, and abandoned her. Furthermore, it was alleged that on or about January 3, 1982, the defendant, Worley, and Brown, while in the company of others, were overheard discussing the forced sexual intercourse they had with Nancy Mitchell and the probability of her body being discovered.

**Motion to Appoint Substitute Counsel and Failure of Trial Court to Recuse Itself.**

██ The defendant argues that the trial court was biased because the judge stated he would file disciplinary charges against Mr. Mitchell, one of the defendant's attorneys. Mr. Mitchell had filed thirty motions in this case within the seven days preceding trial. The judge denied these motions because defense counsel had violated the time limitations of NMSA 1978, Crim.P. Rule 33 (Cum.Supp.1983). Rule 33 states in pertinent part:

(d) **Time for making motions.** All motions, unless otherwise provided by these rules or unless otherwise ordered by the court, shall be made at the arraignment or within twenty days thereafter, unless upon good cause shown the court waives the time requirement.

The defendant contends that the judge's action shows bias, and because of this alleged bias he should have recused himself or allowed Mr. Mitchell to withdraw on the day of the trial.

The defendant admits that he filed the motions in violation of Rule 33.

In support of his contention of judicial bias, the defendant cites *Matter of Klecan*, 93 N.M. 637, 603 P.2d 1094 (1979); *Matter of Avallone*, 91 N.M. 777, 581 P.2d 870 (1978); and *State v. Scarborough*, 75 N.M. 702, 410 P.2d 732 (1966). We do not find these cases applicable here. These cases involved allegations of bias by the trial court against a party. The bias alleged in the present case is against the defendant's attorney and not against the defendant. It has been previously decided that bias or prejudice towards an attorney is insufficient to disqualify a judge unless the bias rises to such a degree as to adversely affect the interests of the client. *Martinez v. Carmona*, 95 N.M. 545, 624 P.2d 54 (Ct.App.1980), *cert. quashed*, 95 N.M. 593, 624 P.2d 535 (1981). In the present case, we find nothing in the record to show any adverse impact upon the interests of the defendant as a result of the actions taken by the judge against Mr. Mitchell. The

judge was enforcing the Rules of Criminal Procedure, NMSA 1978, Crim.P.Rules 1 through 59 (Repl.Pamp.1980 and Cum. Supp.1983), and such action by a trial court is not considered bias. In *United Nuclear Corp. v. General Atomic Co.*, 96 N.M. 155, 629 P.2d 231 (1980), *cert. denied* 451 U.S. 901, 101 S.Ct. 1966, 68 L.Ed.2d 289 (1981), this Court dealt with a situation where the trial court was alleged to be biased due to sanctions and orders imposed upon General Atomic Co. This Court noted that criticism by the trial court of a party or its counsel was inevitable when the trial court was faced with a violation of discovery rules and orders. In the present case, the trial court informed Mr. Mitchell that it disapproved of his violation of the procedural rules. This is not the equivalent of bias which must arise from some extra-judicial source. *Id.*

■ Defendant further argues that certain rulings made by the trial court demonstrate its alleged bias against Mr. Mitchell. This argument is equally without merit. *In Re I.B.M.*, 618 F.2d 923 (2nd Cir.1980) dealt with a claim of bias based on unfavorable rulings by the trial court. We agree with the reasoning of *In Re I.B.M.* that bias requiring recusal must be personal, and cannot be based on unfavorable rulings. *See also United Nuclear Corp. v. General Atomic Co.*

Defendant also claims that Mr. Mitchell should have been allowed to withdraw from the case on the day of trial due to his alleged conflict between "pleasing" the trial court and aggressively representing the defendant. A review of the record indicates that the actions of the trial court in no way adversely affected the nature of the defendant's case. Mr. Mitchell aggressively defended his client throughout this case and was in no way intimidated by the trial court's actions prior to trial.

■ Moreover, the defendant was also represented throughout trial by co-counsel who was equally as aggressive as Mr. Mitchell in presenting the defendant's case. Our review of the record shows that any alleged conflict which may have existed had no adverse effect upon Mr. Mitchell or the performance of co-counsel. There must have been an actual conflict which adversely affected the defense lawyer's performance. Absent an actual conflict, the defendant has no claim. *Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980); *State v. Robinson*, 99 N.M. 674, 662 P.2d 1341 (1983).

■ We find that the trial court did not err in denying the defendant's motion to appoint substitute counsel, nor in failing to recuse itself.

**Admissibility of Evidence that the Decedent Was Seen Several Days After the Murder Allegedly Occurred.**

At trial, the defense called Tammie Simmons (Simmons), who testified regarding a visit she had with a friend, Michelle Kent (Kent), on or about January 6, 1982. At a bench conference, the State explained it believed Simmons was about to respond with inadmissible hearsay and lodged an objection. The prosecution claimed Simmons would testify that her friend Kent said "there goes Nancy Mitchell" but that Simmons turned and did not see her. Defense counsel argued that Kent's declaration was admissible as a present sense impression or an excited utterance pursuant to NMSA 1978, Evid.Rule 803(1) and (2) (Repl.Pamp.1983).

■ The present sense impression exception is one of a potentially broad nature. In *State v. Perry*, 95 N.M. 179, 619 P.2d 855 (Ct.App.1980), the Court of Appeals stated that a trial court must assess the time element and determine that the statement was made at or near the time of the occurrence. Next, the Court of Appeals noted that the declarant could be unavailable, and could even be an unidentified bystander. In light of that possibility, the Court of Appeals stated that:

The admissibility of the statement will depend upon the trial court's view of the type of case, the availability of other evidence, the verifying details of the

statement and the setting in which the statement was made.

*Id.* at 180, 619 P.2d at 856, citing 4 J. Weinstein & M. Berger, Weinstein's Evidence, § 803(1)[01] (1979). The trial court therefore has a correspondingly broad discretion to assess the reliability of the statement made by a witness who does not testify.

In the present case, the statement of identification was made by a declarant whose whereabouts were unknown at the time the statement was offered into evidence. Furthermore, there were no identifying details in the statement. The record indicates that this identification was based on the absent declarant's brief glimpse of the person she believed to be Nancy Mitchell. By the time Simmons looked up in response to Kent's declaration, the person was no longer visible. Therefore, Simmons was unable to verify that Nancy Mitchell was in the passing car. Under *State v. Perry* the trial court may consider whether the absent declarant's observation could be verified by the witness who heard the declaration. In order for the trial court to assess the value of the testimony in a situation where a statement made under questionable circumstances is offered, the witness offering the statement must be capable of being thoroughly cross-examined. Here there was no possible way to cross-examine Simmons because she did not see what Kent saw. Given the questionable nature of Kent's statement, we find that the trial court did not abuse its discretion by excluding Simmons' testimony. Absent a clear abuse of that discretion, reversal is not appropriate. *State v. Stout*, 96 N.M. 29, 627 P.2d 871 (1981).

The defendant also contends that the trial court abused its discretion by denying the defense motion for a continuance so that Kent could be brought in from Texas as a witness. The defendant sought this continuance on three separate occasions at different stages of the trial.

The defendant initially sought a continuance while at the same time stating that he had "no idea" where Kent was.

This request was denied. This Court has previously sustained the trial court in denying a continuance when the whereabouts of the witness were unknown, and it was unknown when the witness would be able to testify. *State v. Perez*, 95 N.M. 262, 620 P.2d 1287 (1980). At this point in the trial, there was nothing to indicate to the trial court that Kent could be located within a reasonable time, if ever. *Id.; State v. Brewster*, 86 N.M. 462, 525 P.2d 389 (Ct. App.1974). We find the trial court did not abuse its discretion by denying this continuance. *State v. Perez.*

The second request for a continuance was made after the defense had rested its case and after the State had concluded its rebuttal evidence. The request was made in order to bring in Kent, whom the defense had now located in Texas, and to allow the defense time to prepare surrebuttal for a State's rebuttal witness. The trial court denied the continuance request on both grounds. We also find the trial court did not abuse its discretion in denying the second request. A party cannot obtain a continuance to secure an absent witness without showing that it has used due diligence to obtain the witness's testimony. *State v. Perez.*

Defense counsel had been the defendant's attorney for over seven months at this point in the trial. Furthermore, the defendant claims to have discovered this evidence several days earlier. However, the record shows that Simmons, who allegedly was with Kent, had already testified in a preliminary hearing of a co-defendant in this matter and had therefore been discovered by counsel for that co-defendant.

In this case, defense counsel claims to have discovered the existence of Simmons and Kent during trial the previous week. However, defense counsel took no steps to compel Kent's attendance. It is elementary that due diligence requires an attempt to compel the witnesses' attendance. *State v. Perez. See also State v.*

*Fernandez,* 56 N.M. 689, 248 P.2d 679 (1952).

■ The third request for continuance was made by the defendant midway through the defense surrebuttal evidence. The defense mentioned the need for a "witness certificate" presumably in order to compel Kent's attendance pursuant to the Uniform Act to Secure the Attendance of Witnesses from Without a State in Criminal Proceedings. NMSA 1978, §§ 31–8–1 through 31–8–6. The defendant requested a continuance in order to have the witness flown in, or to allow defense counsel and the district attorney to go to Texas in order to depose the witness or in the alternative, to depose Kent through a conference call. Defense counsel then proceeded to make a tender of proof concerning what Kent would testify to if called as a witness. The trial court also denied this motion for a continuance.

We apply the due diligence standard to this request as well. We find it reasonable to expect that through the exercise of due diligence, a certificate could have been timely prepared once Kent's whereabouts were determined. Instead, counsel requested a continuance to prepare a document required under the Uniform Act. Due diligence was not shown in this case. We therefore find the trial court did not abuse its discretion in denying this third request for a continuance.

**Refusal of Trial Court to Voir Dire Jurors or Declare a Mistrial Due to Alleged Juror Misconduct.**

The defendant contends that the trial court abused its discretion by refusing to declare a mistrial or voir dire jurors following an allegation of juror misconduct. This issue was raised by defense counsel following a radio report that during a noon recess, a woman had heard jurors remark that the defendant was going to be found guilty. The trial court stated that it spoke to the person who was the subject of this report and asked her if she knew whether the people she had overheard were jurors. She answered she did not know. The defendant requested a mistrial, and the name of the witness in order to subpoena her. The trial court then gave the name of Deloris Reich (Reich) to both sides in order that she could be interviewed. A review of the record indicates that Reich was crossing the street with a group of people when she overheard the remarks but that she had no idea who made the remarks.

Based on the defendant's motion for mistrial, a hearing was granted at which Reich testified. Again, she would not say positively that any comment she overheard was made by a juror or overheard by members of the jury. She admitted that she could not say that any juror said anything. Reich stated that she had merely made a casual comment to the local reporter who "got [her] into all this." Following this hearing, the trial court denied the defendant's motion to declare a mistrial and to voir dire jurors.

■ NMSA 1978, UJI Crim. 1.00 (Supp. 1983) provides the following jury admonition:

Until you retire to deliberate the case, you must not discuss this case or the evidence with anyone, even with each other. It is important that you keep an open mind and not decide any part of the case until the entire case has been completed and submitted to you.

There is a presumption that the jury will adhere to UJI Crim. 1.00. *State v. Doe,* 99 N.M. 456, 659 P.2d 908 (Ct.App.), *cert. denied* 99 N.M. 477, 660 P.2d 119 (1983); *see also State v. Sandoval,* 99 N.M. 173, 655 P.2d 1017 (1982).

■ In the case of alleged juror misconduct, a decision of the trial court to voir dire a jury is a matter of discretion limited only by the essential demands of fairness. If there is no evidence of probable juror impropriety, the trial court does not abuse its discretion by refusing to voir dire the jury. *State v. Doe.*

■ In the case of *State v. Chavez,* 78 N.M. 446, 432 P.2d 411 (1967), the defendant claimed that the husband of a prosecuting witness had threatened members of the

jury. The witness who supposedly overheard this threat was unable to identify the person to whom the threat was made, nor was she certain it was a juror. In upholding the trial court's finding that there was insufficient evidence to establish the threat, this Court noted that it was for the trial court to assess the weight and credibility of evidence. The trial court is not required to accept equivocal evidence as true. *State v. Chavez.* In the present case, witness Reich was equivocal as she could not say that any juror made or heard the remarks in question. There was insufficient proof of juror misconduct to overcome the presumption that the jury obeyed its instructions. We therefore find that the trial court did not abuse its discretion by refusing to voir dire the jury, nor by denying a motion for mistrial.

### "Death Qualification" of the Jury.

 The plaintiff argues that the "death qualification" of the jury creates a biased conviction prone jury, in violation of the Sixth and Fourteenth Amendments of the United States Constitution. U.S. Const. amend. VI and XIV. The defendant makes this argument despite the fact that he was not sentenced to death. In this case we find it unnecessary to reach the defendant's general arguments concerning the statutory process of the death penalty because the defendant's basic premise is without merit. Moreover, this Court previously has addressed the issue raised by the defendant and answered adversely. *State v. Gilbert,* 100 N.M. 392, 671 P.2d 640, *petition for cert. filed,* 52 U.S.L.W. —— (U.S. Dec. 16, 1983) (No. 83–5843); *State v. Simonson,* 100 N.M. 297, 669 P.2d 1092 (1983); *State v. Garcia,* 99 N.M. 771, 664 P.2d 969, *cert. denied,* —— U.S. ——, 103 S.Ct. 2464, 77 L.Ed.2d 1341 (1983); *State v. Hutchinson,* 99 N.M. 616, 661 P.2d 1315 (1983); *State v. Trujillo,* 99 N.M. 251, 657 P.2d 107 (1982).

We have reviewed the record and find that the "death qualification" method used by the trial court did not violate the defendant's right to a neutral jury or his right to a jury composed of a fair cross-section of the community.

Having found no error by the trial court, the defendant's convictions are affirmed.

IT IS SO ORDERED.

FEDERICI and RIORDAN, JJ., concur.