The slip opinion is the first version of an opinion released by the Chief Clerk of the Supreme Court. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Chief Clerk for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

**Filing Date:** May 22, 2023

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                                                    NO. S-1-SC-39142

**ROGER L. GAGE,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF RIO ARRIBA COUNTY**
**Jason Lidyard, District Judge**

Bennett J. Baur, Chief Public Defender
Kimberly Chavez Cook, Appellate Defender
Joelle N. Gonzales, Assistant Appellate Defender
Santa Fe, NM

for Appellant

Hector H. Balderas, Attorney General
Maris Veidemanis, Assistant Attorney General
Santa Fe, NM

for Appellee

## DECISION

**VIGIL, Justice.**

{1}     A jury found Defendant Roger Gage guilty of three counts of first-degree murder and one count each of aggravated burglary, conspiracy to commit murder,

and tampering with evidence. For each death, the jury returned general guilty verdicts for first-degree murder and special verdict forms finding Defendant guilty of *both* willful and deliberate murder *and* felony murder. Defendant was sentenced to three terms of life imprisonment and twenty-one years for the remaining convictions, all to run consecutively.

{2} Pursuant to Article VI, Section 2 of the New Mexico Constitution and Rule 12-102(A)(1) NMRA, Defendant appeals directly to this Court making four arguments: (1) that the district court erred in refusing to recuse itself, (2) that the district court erred in denying Defendant's motion to suppress his incriminating statements, (3) that Defendant's two capital sentences for acting as an accomplice to first-degree murder are unconstitutional, and (4) that Defendant's convictions for both willful and deliberate murder and felony murder violate double jeopardy. Because New Mexico precedent sufficiently addresses these issues, we exercise our discretion to resolve this case by way of a nonprecedential decision under Rule 12-405(B)(1) NMRA.

{3} We agree with Defendant's double jeopardy argument and order that Defendant's three convictions for felony murder be vacated. We reject Defendant's remaining arguments and otherwise affirm.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

{4}   In 2018, Defendant and his brother entered into a home where drugs were sold. The home's video surveillance system clearly captured the brothers' entry and the ensuing killings. The brothers shot the home's three occupants at point-blank range, took a safe and a laptop from the bedroom, again shot each of the three occupants, and exited. After discovering the victims, the police reviewed the home's surveillance footage, recognized Defendant and his brother, and arrested them.

{5}   District Judge Lidyard presided over Defendant's case. Before Judge Lidyard assumed the bench, he served as an assistant district attorney (A.D.A.). In one case, A.D.A. Lidyard prosecuted a person represented by Mr. Thomas Clark, who was Defendant's attorney in this case. In that case, the district attorney's office filed a complaint against A.D.A. Lidyard, alleging that he failed to disclose exculpatory evidence to Mr. Clark. Given his firsthand knowledge of the alleged violations, Mr. Clark was to serve as a witness in the disciplinary proceeding brought against A.D.A. Lidyard. However, before the disciplinary proceeding began, Judge Lidyard assumed the bench and was presiding over Defendant's case. The record is silent on whether the disciplinary proceeding occurred before the date of Defendant's trial.

{6}   Defendant entered into a proposed plea agreement with the State. Under the proposed plea agreement, Defendant agreed to plead guilty to three counts of first-

degree murder and one count of aggravated burglary in exchange for a sentence of life imprisonment plus nine years. However, Judge Lidyard rejected the proposed agreement, concluding that a trial would better serve the interests of justice. Defendant and the State filed a joint motion to reconsider, which Judge Lidyard denied.

{7}     Defendant and the State then attempted to recuse Judge Lidyard. Because the period for recusal as a matter of right had expired, Mr. Clark asked Judge Lidyard to voluntarily recuse himself. To this, the judge responded, "There is no reason to question my ability to fairly and impartially preside over this case . . . ." Later, Mr. Clark again voiced his concern about Judge Lidyard's impartiality due to his role as a witness against Judge Lidyard in the pending disciplinary proceeding. Judge Lidyard dismissed these concerns, reasoning,

> There is no rule that requires a judge to recuse or disqualify himself from proceedings in which a party . . . is represented by a lawyer who has assisted or cooperated in [a complaint against a judge] . . . . There is nothing about Mr. Clark's involvement in the process involving myself that would cause me to retaliate against him . . . and there is further nothing about his involvement that would generate within me a bias or prejudice against him . . . .

{8}     Subsequently, Defendant and the State filed a joint motion to reconsider recusal, articulating the parties' shared concern regarding the judge's appearance of impropriety. Judge Lidyard denied this motion as well.

4

{9} Defendant filed a motion to suppress incriminating statements he made to Sergeant Joey Gallegos during an interrogation following his arrest. In support of this motion, Defendant contended that his statements were not voluntarily made because he was incoherent and uncomfortable while speaking with Sergeant Gallegos. He also asserted that the statements were coerced due to implied promises of leniency made by the police officers conducting the interrogation. We detail and discuss these allegations further in our analysis of this argument. After considering Defendant's arguments, Judge Lidyard denied the motion to suppress, and Defendant's incriminating statements were admitted into evidence.

{10} As already noted, the jury convicted Defendant of three counts of first-degree murder. However, the jury found Defendant guilty of *both* willful and deliberate murder *and* felony murder for each death. None of the alternate convictions were vacated, and as matters stand, Defendant remains convicted of both willful and deliberate murder and felony murder for each of the three killings.

## II. DISCUSSION

### A. Recusal

{11} Defendant argues that Judge Lidyard abused his discretion in denying the parties' joint motion to recuse. Defendant suggests that a reasonable appearance of impropriety—stemming from Mr. Clark's role as a prospective witness in the

5

disciplinary proceeding and the parties' agreement that Judge Lidyard could not preside over Defendant's case without bias—required Judge Lidyard to disqualify himself. Defendant also points to Judge Lidyard's adverse rulings against Defendant as evidence of bias. We reject these arguments.

{12} "[R]ecusal rests within the discretion of the trial judge, and will only be reversed upon a showing of an abuse of that discretion." *State v. Riordan*, 2009-NMSC-022, ¶ 6, 146 N.M. 281, 209 P.3d 773. "'An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case . . . [or when the ruling is] clearly untenable or not justified by reason.'" *Id.* (quoting *State v. Rojo*, 1999-NMSC-001, ¶ 41, 126 N.M. 438, 971 P.2d 829).

{13} "Voluntary recusal is reserved for compelling . . . ethical reasons because a judge has a duty to sit where not disqualified which is equally as strong as the duty to not sit where disqualified." *State v. Hernandez*, 1993-NMSC-007, ¶ 43, 115 N.M. 6, 846 P.2d 312 (brackets, internal quotation marks, and citation omitted). Judges shall therefore only disqualify themselves when "the judge's impartiality might reasonably be questioned, including [circumstances when the] judge has a personal bias or prejudice concerning a . . . party's lawyer." Rule 21-211(A)(1) NMRA. Impartiality is reasonably questioned when "an objective, disinterested observer, fully informed of the underlying facts, would entertain significant doubt that justice

would be done absent recusal." *Riordan*, 2009-NMSC-022, ¶ 11 (brackets, internal quotation marks, and citation omitted).

{14}   An attorney's involvement in a complaint against a judge does not automatically necessitate recusal. Rule 21-216 NMRA provides that a judge "shall not retaliate" against anyone who has filed a complaint against a judge, but does not require disqualification when the judge can impartially preside. In such cases, "bias or prejudice towards an attorney is insufficient to disqualify a judge unless the bias rises to such a degree as to adversely affect the interests of the client." *State v. Case*, 1984-NMSC-012, ¶ 6, 100 N.M. 714, 676 P.2d 241. Therefore, absent evidence of bias that adversely affected the interests of Defendant—which Defendant does not present—the mere fact that Mr. Clark intended to testify in Judge Lidyard's pending disciplinary proceeding was insufficient to require recusal. *See id.*

{15}   Second, the parties' consensus on the motion to recuse did not require Judge Lidyard's disqualification. Rule 21-211 lists the circumstances under which judges "shall disqualify" themselves because their "impartiality might reasonably be questioned," but this enumeration does not include joint motions to recuse. Regardless of the parties' consensus on the motion, absent a showing of bias adversely affecting the interests of the client, recusal was not required.

7

{16} We also note that the parties' joint involvement in Judge Lidyard's pending disciplinary proceeding makes allegations of bias seem particularly unreasonable. Both the State and Mr. Clark were involved in the pending action—the State as the complainant and Mr. Clark as the witness. We therefore consider Defendant's suggestion of bias in combination with the judge's coequal potential for bias against the State. In light of this coequal potential for bias against the State, we cannot conclude that Judge Lidyard's impartiality could be reasonably questioned under the circumstances.

{17} Third, adverse rulings against a party, without more, do not support a conclusion that a district court judge is biased, requiring recusal. *Case*, 1984-NMSC-012, ¶ 7. Here, Judge Lidyard rejected the proposed plea deal between Defendant and the State, which featured a more lenient sentence than the term imposed after trial. However, "a [district] court has broad discretion to accept or reject a plea agreement." *State v. Mares*, 1994-NMSC-123, ¶ 10, 119 N.M. 48, 888 P.2d 930; *see also State v. Neal*, 2007-NMCA-086, ¶ 25, 142 N.M. 487, 167 P.3d 935 ("[C]ourts are afforded broad discretion in fashioning sentences appropriate to the offense and the offender." (internal quotation marks and citation omitted)). We conclude that an objective observer would not reasonably question whether Judge Lidyard's decision

to reference the jury's verdict in formulating the appropriate sentence was affected by his bias against Defendant.

**{18}** Because the facts of this case did not necessitate recusal, Judge Lidyard was required to exercise his judicial duty so long as his continued involvement did not adversely affect Defendant's interests. *See Case*, 1984-NMSC-012, ¶ 6. And, as discussed in Section B below, Defendant fails to identify any instance in which he was unfairly affected by Judge Lidyard's supervision of the case. Therefore, we hold that Judge Lidyard properly exercised his duty to preside, and he did not abuse his discretion in denying the parties' joint efforts for recusal.

**B.    Suppression**

**{19}** There is no dispute that Defendant was given *Miranda* warnings and that he waived his *Miranda* rights before he was interrogated. On appeal, Defendant does not challenge the adequacy of those warnings or whether the waiver of his *Miranda* rights was voluntary. Defendant instead argues that his statements were involuntary due to mental incapacity and coercion. Defendant argues reversible error resulted when his motion to suppress was denied, and his incriminating statements were admitted into evidence. We disagree.

**{20}** This Court reviews the voluntariness of confessions de novo. *State v. Evans*, 2009-NMSC-027, ¶ 32, 146 N.M. 319, 210 P.3d 216. In so doing, the Court

"examine[s] the entire record and the circumstances under which the confession was made, and . . . make[s] an *independent determination of the ultimate question of voluntariness.*" *Aguilar v. State*, 1988-NMSC-004, ¶ 7, 106 N.M. 798, 751 P.2d 178 (emphasis in original). Put another way, the Court "examine[s] the 'totality of the circumstances' surrounding the confession . . . ." *State v. Fekete*, 1995-NMSC-049, ¶ 34, 120 N.M. 290, 901 P.2d 708 (citation omitted).

{21} Presented with a claim that a confession is involuntary, "[the State] has the burden of proving the voluntariness of a defendant's statement by a preponderance of the evidence." *Fekete*, 1995-NMSC-049, ¶ 34. "If the [S]tate fails to prove voluntariness by a preponderance of the evidence, the [district] court must rule that the confession was involuntary as a matter of law." *Aguilar*, 1988-NMSC-004, ¶ 11. "Consequently, if the [S]tate only adduces evidence proving an equal likelihood that the confession was either voluntary or involuntary, the [S]tate has not satisfied its burden." *Id*.

{22} Relevant evidence of voluntariness includes evidence of the confessor's personal characteristics. *See State v. Gutierrez*, 2011-NMSC-024, ¶ 23, 150 N.M. 232, 258 P.3d 1024 (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973)). As applicable here, relevant characteristics include the confessor's intelligence, whether the confessor was deprived of food or sleep before the interrogation, and

whether the confessor was impaired or suffering from mental illness. *Id*.; *State v. Montano*, 2019-NMCA-019, ¶ 17, 458 P.3d 512.

{23} However, the confessor's troubled state of mind or impairment levels are independently "insufficient to render a confession involuntary without accompanying police misconduct or overreaching." *Montano*, 2019-NMCA-019, ¶ 17. The State must have seized upon and exploited the confessor's vulnerable characteristics or conditions to render the confession involuntary. *See Evans*, 2009-NMSC-027, ¶ 38. Moreover, "[c]ase law makes it clear that when interrogators are unaware of, and therefore cannot exploit, the mental or emotional vulnerabilities of a suspect, the crucial link between the confession and official action is missing." *Id*.

{24} We can only conclude that a confession is involuntary when "official coercion" occurs such that "a defendant's will has been overborne and his capacity for self-determination has been critically impaired." *Id*. ¶ 33 (brackets, internal quotation marks, and citation omitted). That is to say, an "essential link" between the official coercion and the resulting confession is critical to a determination that the confession is involuntary. *Id*. (internal quotation marks and citation omitted).

{25} The essential link between the State's coercive activity and an involuntary confession exists when the State explicitly promises leniency in exchange for the defendant's admission. *See State v. Tindle*, 1986-NMCA-035, ¶ 28, 104 N.M. 195,

718 P.2d 705. "If the accused confesses because he was induced by the promise that his punishment will not be so severe as it otherwise might be, the confession is not admissible because it was not voluntary." *State v. Watson*, 1971-NMCA-104, ¶ 11, 82 N.M. 769, 487 P.2d 197. However, "where promises [of lenity] are merely implied, they are only one factor to be considered in the overall totality of circumstances." *Evans*, 2009-NMSC-027, ¶ 42. Similarly, "threats that merely highlight potential real consequences, or are adjurations to tell the truth, are not characterized as impermissibly coercive" for the purpose of determining voluntariness. *Id.* ¶ 43 (internal quotation marks and citation omitted).

{26} The record contains a number of circumstances that are relevant to the issue of voluntariness, which we consider in concert. *Fekete*, 1995-NMSC-049, ¶ 34. At the outset, we note Defendant's uncontroverted personal characteristics. Defendant attended special education classes in high school, suffered from depression, and suffered from drug addiction. When he was arrested and gave his incriminating statements, Defendant was thirty-three years old.

{27} However, none of these characteristics make Defendant's statement involuntary. Although Defendant attended special education classes, a learning disability does not necessarily render a confession involuntary. *Cf. Gutierrez*, 2011-NMSC-024, ¶ 15 (holding that despite the defendant's ADHD diagnosis, he

knowingly waived his *Miranda* rights). Furthermore, we consider Defendant's learning disability in tandem with his successful graduation from high school, which weighs in favor of a conclusion that Defendant was mentally equipped to understand the significance and consequences of the interrogation. *See Munoz*, 1998-NMSC-048, ¶ 27, 126 N.M. 535, 972 P.2d 847. Similarly, Defendant's history of depression does not itself demonstrate a lack of voluntariness, s*ee State v. Cooper*, 1997-NMSC-058, ¶¶ 47, 50, 124 N.M. 277, 949 P.2d 660 (holding that the defendant's confession was voluntary despite his "weakened mental state"), nor does Defendant's history of drug use, s*ee Munoz*, 1998-NMSC-048, ¶¶ 9, 25 (holding that testimony regarding the defendant's history of drug abuse did not trump the state's testimony regarding the defendant's apparent lucidity during the interrogation). Defendant's age, too, weighs in favor of voluntariness. *See id*. ¶ 27 (noting that the confessor, two months shy of turning nineteen years old, qualified as an adult, which weighed in favor of voluntariness). Moreover, Defendant provides no evidence that Sergeant Gallegos was aware of these characteristics such that he could seize upon them to coerce Defendant. *See Evans*, 2009-NMSC-027, ¶ 38.

{28}    We also consider a number of conditions imposed upon or experienced by Defendant at the time of interrogation as part of the totality of the circumstances analysis. Defendant asserted that he was uncomfortable due to an hour-long car ride

13

with his hands cuffed behind his back, he was tired from waiting in a holding cell and being in custody for four hours, and he was not given water or access to the restroom. Defendant also alleges that on the morning of his arrest, he smoked methamphetamine and that he used heroin shortly before his arrest, meaning that he was under the influence during the interrogation. Countering, the State provides that Defendant never expressed any discomfort and did not ask for food, rest, access to the restroom, or medical treatment. Regarding Defendant's alleged impairment, the State notes that Defendant never told Sergeant Gallegos that he was under the influence; in fact, Defendant appeared lucid and in control of his faculties throughout the interview. We agree with the State's description. Our review of the record reveals that Defendant conducted himself in a calm, coherent, and even affable manner throughout the forty-seven minute interview, evidencing no signs of fatigue, hunger, discomfort, or impairment.

{29} The totality of the foregoing circumstances does not support a determination of involuntariness. Aside from his own testimony, Defendant fails to produce any evidence of his discomfort or impairment. *See Evans*, 2009-NMSC-027, ¶ 37 (rejecting an involuntary confession claim when "there is little in the record, apart from [the d]efendant's own words" suggesting the defendant was impaired). Furthermore, even if Defendant was in fact uncomfortable due to his

14

preinterrogation detention, this does not make his statements involuntary. *See State v. Lobato*, 2006-NMCA-051, ¶ 11, 139 N.M. 431, 134 P.3d 122 ("Absent evidence that the officers deprived [the defendant] of food and rest as a means of physical punishment, the fact that [the defendant] happened to be hungry and tired does not support a conclusion that his statements were involuntary." (internal quotation marks and citation omitted)). The same is true regarding Defendant's alleged impairment; even if he was under the influence of narcotics, he was still capable of making a voluntary confession. *See Lobato*, 2006-NMCA-051, ¶ 11 ("[A] claim that a defendant was . . . suffering from the effects of alcohol is not, in the absence of coercive law enforcement activity, sufficient to characterize his confession as involuntary." (internal quotation marks and citation omitted)). Therefore, the conditions surrounding Defendant's interrogation do not contribute to a determination of involuntariness.

{30} Lastly, Defendant contends that the State coerced his statements through a series of implied threats and implied promises of leniency. Defendant highlights four of the sergeant's statements: (1) "I don't want your brother to have to go through a lot of this stuff for you," (2) "I don't want to see you or your brother have to deal with a lot of this stuff," (3) "I don't want to have to throw a bunch of charges on [your brother], for whatever reason," and (4) "I don't want to have to drag all these

15

other people in." Defendant argues that the third statement impliedly threatened Defendant's brother, the second statement implied leniency for Defendant himself, and all four statements impliedly promised leniency for Defendant's brother.

{31} We agree with the State that statements (1) and (2) are not implied promises or threats because nothing was promised or threatened. At best, Sergeant Gallegos suggests, in statements (1) and (2) that he does not want to see Defendant's brother take responsibility for Defendant's acts. The third statement is likewise not threatening. Sergeant Gallegos is merely stating that he did not want unnecessary charges brought against Defendant's brother. Sergeant Gallegos did not say that no charges, or lesser charges, would be brought against Defendant's brother if Defendant confessed. Even if they were construed as such, "threats that merely highlight potential real consequences . . . are not characterized as impermissibly coercive." *Evans*, 2009-NMSC-027, ¶ 43. Finally, statement (4) is so vague, it is impossible to give it a connotation of coercion.

{32} Defendant's argument that the four statements contained implied promises of leniency is even less persuasive. The totality of the circumstances do not even suggest that Defendant could have reasonably inferred that he or his brother would be free from prosecution—or enjoy a more lenient prosecution—in exchange for Defendant's statements. *See Munoz*, 1998-NMSC-048, ¶ 34 (considering whether

16

the defendant "could reasonably have inferred a promise going to the punishment for the crime to be confessed" (internal quotation marks and citation omitted)).

{33}     Defendant himself notes that he never outright admitted guilt in his statement. Rather, he purposefully and explicitly reined in his testimony, indicating that he did not want to incriminate himself. Defendant also refused to directly incriminate his brother, responding, "you gotta talk to him" when asked about his involvement in the killings. Defendant's hesitancy to incriminate himself or his brother indicates that he did not reasonably infer express or implied coercion or leniency in securing his incriminating statements. The district court also observed:

> Defendant's outward appearance appeared the same throughout the entire interrogation. Defendant also appeared to have the ability to control the interrogation, making the comment at one point that he didn't want to further incriminate himself. These reactions indicate an ability to continue the interrogation while remaining in control of his will and [faculties].

{34}     For the foregoing reasons, we reject Defendant's arguments under this point.

## C.     Constitutionality of the Sentence

{35}     Defendant argues that because the surveillance video, which recorded the murders, shows that Defendant shot one of the victims while his brother shot the other two victims, his three life sentences constitute cruel and unusual punishment in violation of the New Mexico and United States Constitutions. This argument is not developed, and rightly so. As Defendant acknowledges, "[a] person who is an

17

accessory to a crime is equally culpable . . . as the principal." *State v. Torres*, 2018-NMSC-013, ¶ 44, 413 P.3d 467; NMSA 1978, § 30-1-13 (1972) ("A person may be charged with and convicted of the crime as an accessory if he procures, counsels, aids or abets in its commission . . . .").We also reject this argument.

**D.    Double Jeopardy**

{36}    Defendant argues—and the State concedes—that Defendant's six convictions for first-degree murder violate double jeopardy. While this consensus is not binding on the Court, we also agree. *See State v. Comitz*, 2019-NMSC-011, ¶ 25, 443 P.3d 1130 (noting that the Court independently assesses a party's claim despite concessions from the opposition).

{37}    Stemming from the killings of the three victims, the jury convicted Defendant of three counts of first-degree, willful and deliberate murder and three counts of felony murder. While only one capital sentence was imposed for each murder, under the judgment and sentence, Defendant stands convicted of six first-degree murder convictions for three killings. However, "Under New Mexico precedent, it [is] a violation of double jeopardy to impose more than one homicide conviction for one death." *State v. Saiz*, 2008-NMSC-048, ¶ 36, 144 N.M. 663, 191 P.3d 521, *abrogated on other grounds by State v. Belanger*, 2009-NMSC-025, ¶ 26, 146 N.M. 357, 210

P.3d 783. Defendant's three felony murder convictions must be vacated on double jeopardy grounds.

## III.   CONCLUSION

{38}   We remand to the district court to vacate Defendant's three convictions for felony murder, and otherwise affirm.

{39}   **IT IS SO ORDERED.**

_____

**MICHAEL E. VIGIL, Justice**

**WE CONCUR:**

_____

**C. SHANNON BACON, Chief Justice**

_____

**DAVID K. THOMSON, Justice**

_____

**JULIE J. VARGAS, Justice**

_____

**BRIANA H. ZAMORA, Justice**