Certiorari Denied, May 31, 2017, No. S-1-SC-36443

IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2017-NMCA-057

Filing Date: April 20, 2017

Docket Nos. 34,146, 34,381, 34,875, and 34,876 (consolidated)

STATE OF NEW MEXICO,

Plaintiff-Appellee/Cross-Appellant,

v.

LORENZO SALAS,

Defendant-Appellant/Cross-Appellee.

APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY
Judith K. Nakamura, District Judge

Hector H. Balderas, Attorney General
Santa Fe, NM
Elizabeth Ashton, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Sergio J. Viscoli, Appellate Defender
Kathleen T. Baldridge, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## OPINION

**WECHSLER, Judge.**

**{1}** Defendant Lorenzo Salas appeals from his conviction for battery on a peace officer, contrary to NMSA 1978, Section 30-22-24 (1971). Defendant raises numerous alleged errors arising from his trial, probation revocation hearing, and sentencing as a habitual offender.

**{2}** As to his trial, Defendant argues that the district court erred by denying his (1)

motion to dismiss due to the State's failure to collect potentially exculpatory evidence, (2) request for a mistrial due to alleged witness tampering, (3) request to poll the jury for evidence of juror misconduct, and (4) request for a mistrial due to prosecutorial misconduct. Defendant also argues that (1) the district court issued an impermissible shotgun jury instruction and (2) substantial evidence does not support a finding of guilt as to each element of the charged offense. As to his probation revocation hearing, Defendant argues that the district court violated his procedural due process rights. Finally, as to his habitual offender hearings (sentencing hearings), Defendant argues that the district court erred by conducting a subsequent sentencing hearing (1) in violation of his right to be free from double jeopardy and (2) in violation of his right to due process. Defendant also argues that (1) he received ineffective assistance of counsel and (2) substantial evidence does not support a finding that he was the person convicted of the prior felonies as alleged in the supplemental criminal information.

**{3}** The State filed a cross-appeal arguing that the district court erred in finding that the State did not meet its burden to prove that Defendant was the individual identified in the supplemental criminal information at Defendant's initial sentencing hearing. The State did not brief this argument on appeal, and it is, therefore, abandoned. *See State v. White*, 1994-NMCA-084, ¶ 1, 118 N.M. 225, 880 P.2d 322 ("Issues raised at earlier stages of the appeal but not briefed are deemed abandoned.").

**{4}** For the reasons discussed herein, we conclude that each of Defendant's arguments is without merit. We therefore affirm the district court.

## BACKGROUND

**{5}** On October 24, 2011, Defendant reported to the Bernalillo County Metropolitan Detention Center (MDC) to serve a twenty-four hour remand sentence. During booking, Defendant verbally abused booking technician Jessica Alvarez and threw a pen at her. The pen struck Alvarez in the chest. Alvarez reported Defendant's conduct to her immediate supervisor and to corrections officer Kavin Woodard. Woodard sought out Defendant in the men's general holding cell (Cell Five). Woodard found Defendant lying on a concrete bench. Defendant rose and approached Woodard in an aggressive manner, which led Woodard to remove Defendant from Cell Five and to place him in a solitary cell (Cell One). During the walk between the cells, Woodard held both Defendant's hands behind his back. Woodard released one of Defendant's hands from his grasp after entering Cell One, at which point Defendant head-butted Woodard in the mouth. The force of the blow chipped one of Woodard's teeth and lacerated his lip. Corrections officers, including Woodard, Christina Garcia, Larry Smith, and Brian Romm, regained control of Defendant and placed him in restraints. Both Defendant and Woodard received medical attention.

**{6}** MDC personnel filed a report with the Bernalillo County Sheriff's Office (BCSO). Deputy Phillip Gonzales of the BCSO reviewed the report, including the victim statement and photographs attached to the report. Deputy Gonzales then filed a criminal complaint against Defendant for aggravated battery on a peace officer.

**{7}**     Defendant's trial occurred in January 2014. Witnesses for the State included Alvarez, Woodard, Garcia, Romm, and Deputy Gonzales. Defendant testified on his own behalf. The jury found Defendant guilty of battery on a peace officer. The district court sentenced Defendant to eighteen months incarceration but gave him credit for time served and ordered probation for the remaining time. The State filed a supplemental criminal information, alleging that Defendant was a habitual offender under NMSA 1978, Section 31-18-17 (2003), and seeking enhancement of Defendant's sentence.

**{8}**     On December 5, 2014, the district court conducted Defendant's initial sentencing hearing. The State's evidence included "case information pages," which contained inconsistent identifying information about Defendant and certified copies of fingerprint cards from 2004 and 2008 arrests. The evidence did not, however, include a certified copy of Defendant's fingerprint card from the current case. The district court ruled that the State's evidence was not sufficient to prove that Defendant was the person convicted of the prior felonies as alleged in the supplemental criminal information and denied the State's request for sentencing enhancement.

**{9}**     At Defendant's December 16, 2014 probation violation hearing, the State requested a subsequent sentencing hearing. Defendant objected, arguing that double jeopardy prohibited retrial of his habitual offender status.[1] The district court scheduled concurrent hearings to address Defendant's alleged probation violation and sentencing as a habitual offender for January 20, 2015. The scheduled hearings ultimately occurred on February 11, 2015 and February 18, 2015. The district court ruled that Defendant violated his probation and sentenced him to one hundred forty-five days incarceration. The district court then ruled that Defendant was a habitual offender and enhanced his sentence by four years as required under Section 31-18-17.

**{10}**    Both the State and Defendant appealed issues arising from Defendant's trial, his probation revocation hearing, and his sentencing hearings. This Court consolidated these issues on appeal. In lieu of a comprehensive recitation of every event that occurred during Defendant's trial and subsequent hearings, we discuss events relevant to Defendant's appellate arguments as necessary below.

**THE TRIAL**

**{11}**    As to his trial, Defendant argues that any of five alleged errors by the district court requires reversal of his conviction. We review four of these alleged errors for abuse of discretion and the fifth for fundamental error. Defendant additionally argues that substantial evidence did not support his conviction. A district court abuses its discretion if its ruling is "clearly against the logic and effect of the facts and circumstances before the court." *State*

---

[1]Appellate courts use the terms "retrial," "resentencing," and "relitigate" somewhat interchangeably when referring to subsequent sentencing hearings. We use the term "retrial" because it is the term used by the United States Supreme Court in both *Lockhart v. Nelson*, 488 U.S. 33, 34 (1988), and *Monge v. California*, 524 U.S. 721, 734 (1998).

*v. Lucero*, 1999-NMCA-102, ¶ 32, 127 N.M. 672, 986 P.2d 468 (internal quotation marks and citation omitted). "Parties alleging fundamental error must demonstrate the existence of circumstances that shock the conscience or implicate a fundamental unfairness within the system that would undermine judicial integrity if left unchecked." *State v. Cunningham*, 2000-NMSC-009, ¶ 21, 128 N.M. 711, 998 P.2d 176 (internal quotation marks and citation omitted).

**Lost or Destroyed Evidence**

**{12}**    Defendant argues that the district court erred in denying his motion to dismiss due to lost or destroyed evidence. "The denial of a motion to sanction by dismissal or suppression of evidence is reviewed for abuse of discretion." *State v. Duarte*, 2007-NMCA-012, ¶ 3, 140 N.M. 930, 149 P.3d 1027.

**{13}**    Although alternate tests apply under circumstances in which collected evidence is "lost, destroyed, or inadequately preserved," *State v. Ware* articulates the New Mexico test for cases in which the evidence at issue is never collected. 1994-NMSC-091, ¶ 11, 118 N.M. 319, 881 P.2d 679. This test first requires that "the evidence that the [s]tate failed to gather from the crime scene must be material to the defendant's defense." *Id.* ¶ 25. If the evidence is material, the district court must determine whether "the failure to collect the evidence was done in bad faith, [or] in an attempt to prejudice the defendant's case[.]" *Id.* ¶ 26. Such a finding may result in suppression of the evidence. *Id.*

**{14}**    The booking area of MDC is equipped with a video surveillance system, which records with cameras that continuously pan the area. There are no cameras inside either Cell One or Cell Five. Neither MDC personnel nor Deputy Gonzales requested that any potential recording of the incident at issue be reviewed or preserved, and the video surveillance system automatically deleted any relevant recording after six months. Defendant filed a pre-trial motion to dismiss the charge against him due to the State's "destruction of exculpatory evidence." The district court denied the motion, ruling that the State's failure to gather the evidence was not negligent or in bad faith.

**{15}**    Defendant presented no evidence that the surveillance system captured video of either the alleged battery or the immediately preceding interaction. However, even if the surveillance system did capture material evidence, Defendant does not direct this Court to any indication that the failure to collect such evidence was the result of bad faith or an attempt to cause prejudice to Defendant.

**{16}**    Deputy Gonzales testified that his investigation comported with BCSO's standard procedure for incidents at MDC, specifically stating that battery on a peace officer is not a charge that requires an in-person investigation. Deputy Gonzales received Woodard's written statement and the accompanying photographs. He did not, apparently, contemplate the possibility that MDC withheld exculpatory evidence. Even if Deputy Gonzales should have investigated the possibility that exculpatory video evidence existed, his failure to do so was no more than negligent. *See id.* (describing the failure to collect evidence as grossly negligent if the investigating officer "act[s] directly contrary to standard police investigatory

procedure").

**{17}** "When the failure to gather evidence is merely negligent, an oversight, or done in good faith, sanctions are inappropriate, but the defendant can still examine the prosecution's witnesses about the deficiencies of the investigation and argue the investigation's shortcomings against the standard of reasonable doubt." *Id.* Defendant cross-examined Deputy Gonzales at trial with respect to the substance and quality of his investigation. Given this cross-examination of Deputy Gonzales, the district court's denial of Defendant's motion to dismiss was not "clearly against the logic and effect of the facts and circumstances before the court." *Lucero*, 1999-NMCA-102, ¶ 32 (internal quotation marks and citation omitted).

**Witness Tampering**

**{18}** Defendant argues that the district court erred in denying his request for a mistrial due to witness tampering in violation of Rule 11-615 NMRA. "We review the [district] court's denial of a request for a mistrial for abuse of discretion." *Lucero*, 1999-NMCA-102, ¶ 32.

**{19}** Rule 11-615 provides that, if requested, the "court must order witnesses excluded so that they cannot hear other witnesses' testimony[.]" The purpose of the rule is to "prevent witnesses from tailoring their testimony to the testimony of other witnesses." *State v. Ruiz*, 1995-NMCA-007, ¶ 22, 119 N.M. 515, 892 P.2d 962. However, even assuming that the conduct in the current case implicates Rule 11-615, "the choice of remedy [for a violation of the rule] is within the sound discretion of the [district] court." *State v. Reynolds*, 1990-NMCA-122, ¶ 28, 111 N.M. 263, 804 P.2d 1082.

**{20}** In *Reynolds*, the defendant alleged that one of the state's witnesses, who had already testified, discussed the trial with another of the state's witnesses, who had not yet testified. *Id.* ¶ 25. The district court held a hearing on the allegations, denied the defendant's request for a mistrial, and tailored alternate sanctions. *Id.* ¶ 26. This Court affirmed, holding that although a mistrial is a possible remedy for a violation of Rule 11-615, other potential remedies include "striking testimony, citing for contempt, instructing the jury, permitting examination of the witnesses by counsel concerning how their testimony may have been tainted, and permitting argument by counsel." *Reynolds*, 1990-NMCA-122, ¶ 28.

**{21}** Alvarez testified that a secretary employed by the district attorney's office provided her with a copy of Woodard's incident report and that she read portions of the report prior to testifying. She additionally testified that she only read the first three lines of Woodard's report before she stopped reading and that, other than the date of the incident, the report did not serve to refresh her memory of the incident. Defendant requested a mistrial, claiming that Alvarez's reading of Woodard's incident report was akin to communication between witnesses. The district court denied this request.

**{22}** *Reynolds* provides that cross-examination is a possible remedy for a violation of Rule 11-615. *Reynolds*, 1990-NMCA-122, ¶ 28. The district court gave Defendant an opportunity to cross-examine Alvarez as to the clarity with which she remembered the incident independent of Woodard's report. Defendant does not argue on appeal that cross-

examination was an insufficient remedy. As such, the district court's choice of this remedy was not "clearly against the logic and effect of the facts and circumstances before [it.]" *Lucero*, 1999-NMCA-102, ¶ 32 (internal quotation marks and citation omitted).

**Jury Misconduct**

**{23}** Defendant argues that the district court erred by denying his request to poll the jury for evidence of misconduct. Although incompletely developed on appeal, we interpret this argument to address the possibility that the jurors discussed the case amongst themselves in violation of the district court's oral instructions. This Court reviews a district court's refusal to voir dire a jury under such circumstances for abuse of discretion. *State v. Case*, 1984-NMSC-012, ¶ 24, 100 N.M. 714, 676 P.2d 241.

**{24}** "If there is no evidence of probable juror impropriety, the [district] court does not abuse its discretion by refusing to voir dire the jury." *Id.* Additionally, we presume that jurors adhere to instructions not to prematurely discuss the case among themselves. *Id.* ¶ 23.

**{25}** The spouse of one of the jurors sat in the gallery during the first two days of trial. On two occasions, references were made to Defendant's incarceration while outside the presence of the jury but in the presence of the juror's spouse. Due to the possibility that the juror's spouse could have imparted prejudicial information to the juror, the district court excused the juror at the end of the second day of trial. The next day, Defendant requested that the judge voir dire the jury, by way of a generic question, as to any potentially prejudicial information relayed by the excused juror. The district court declined this request, stating that addressing the issue with the jury would simply draw attention to the issue. Defendant did not request a mistrial as a result of the district court's ruling.

**{26}** Defendant neither argues, nor directs this Court to any evidence, that the jury was exposed to extraneous information related to his incarceration during trial. As a result, the district court's ruling was not "clearly against the logic and effect of the facts and circumstances before the court." *Lucero*, 1999-NMCA-102, ¶ 32 (internal quotation marks and citation omitted).

**Prosecutorial Misconduct**

**{27}** Defendant argues on appeal that the district court erred in denying his motion for a mistrial on the issue of prosecutorial vouching. "We review the [district] court's denial of a request for a mistrial for abuse of discretion." *Id.* Defendant's brief in chief also requests relief for additional instances of alleged prosecutorial vouching. In accordance with our appellate rules, we address only those instances for which Defendant provides citation to the record in his brief in chief. *See* Rule 12-318(A)(3) NMRA ("The brief in chief of the appellant . . . shall contain citations to the record proper, transcript of proceedings, or exhibits supporting each factual representation[.]"); *State v. Dominguez*, 2014-NMCA-064, ¶ 26, 327 P.3d 1092 (holding that "we will not search the record to find facts to support [a defendant's] argument").

**{28}**   Defendant claims that the district court erred in its treatment of four specific comments made during the State's closing argument. The first two comments were part of a continuous exchange, which occurred as follows:

| | |
|---|---|
| [The State:] | You have testimony from all of the witnesses that this was a fast, out-of-control situation going on. I believe from Officer Woodard, who said that it was happening in a matter of seconds. It's very possible that it was never caught on film . . . . It's also possible that it lapsed in that six months. But I assure you there's no government conspiracy to hide it. Because you have the witness testimony. If there had been another witness who provided conflicting testimony, you would have heard that too. Because . . . you were given all of the relevant testimony that the State had to provide to you to prove this case beyond a reasonable doubt. |
| [Defense Counsel:] | Objection, Your Honor. She's vouching for the strength of her case and evidence. |
| The Court: | That's true. Jury, disregard that last remark. |
| [The State:] | You heard every witness that was called in this particular case who had relevant testimony to provide. |
| [Defense Counsel:] | Objection, Your Honor. |
| The Court: | Once again, State. |
| [The State:] | Your Honor, may we approach? |
| The Court: | Sure. |
| . . . . | |
| [Defense Counsel:] | Your Honor, I move for mistrial for prosecutorial misconduct. She is not permitted to vouch for the strength of her case and evaluating and making comment that she has evaluated things that she—they chose all the relevant information to present in this case. She has— |
| [The State:] | They put on a defense. We said that they were given relevant information. They had all of the statements that were permitted to be put on for them, therefore |

| | there's nothing impermissible about what I did. |
|---|---|
| The Court: | Do not refer to it as the relevant information, and you put on the information you had and that's fine. It doesn't give rise to a mistrial at this time. So just move on. |

**{29}** The district court agreed that the State's characterization of certain evidence as "relevant" was impermissible and took immediate action to correct the error by issuing a curative instruction after Defendant's first objection. *See State v. Sosa*, 2009-NMSC-056, ¶ 25, 147 N.M. 351, 223 P.3d 348 (holding that "a [district] court can correct any impropriety [in closing argument] by striking statements and offering curative instructions"). It is well-settled that juries are presumed to follow such instructions. *State v. Otto*, 2007-NMSC-012, ¶ 17, 141 N.M. 443, 157 P.3d 8. Defendant did not request similar relief following his second objection but instead requested a mistrial, which was denied. A district court does not err by refusing to give a curative instruction in the absence of such a request. *See State v. Sandoval*, 1975-NMCA-096, ¶ 4, 88 N.M. 267, 539 P.2d 1029 (holding that it is the duty of the complaining party to request a curative instruction). Furthermore, the district court's response to Defendant's second objection implicitly reiterated its previous curative instruction.

**{30}** District courts "are in the best position to assess the impact of any questionable comment" and, therefore, have "broad discretion in managing closing argument." *Sosa*, 2009-NMSC-056, ¶ 25. Given the corrective action taken, the district court's denial of Defendant's request for a mistrial was not "clearly against the logic and effect of the facts and circumstances before the court." *Lucero*, 1999-NMCA-102, ¶ 32 (internal quotation marks and citation omitted).

**{31}** The next two comments centered on the credibility of witness testimony. Although Defendant did not request a mistrial or additional curative instructions with respect to either comment, he argues on appeal that the district court's failure to grant such relief sua sponte deprived him of a fair trial.

**{32}** While discussing Defendant's theory of the case, the State argued that "Defendant is trying to merge the story, but he can't because his testimony today is made out of whole cloth." Such comments are not impermissible, as long as they are not expressed as personal opinion or intended to incite prejudice toward a defendant. *Dominguez*, 2014-NMCA-064, ¶ 23. "Where a case essentially revolves around which of two conflicting stories is true, a party may reasonably infer, and thus argue, that the other side is lying." *Id.* ¶ 25 (internal quotation marks and citation omitted). Defendant testified that Woodard's injury may have resulted from unintentional contact. The State's comment during closing argument merely questioned the credibility of Defendant's testimony in light of other evidence. Even had he objected at trial, such a comment would not entitle Defendant to a mistrial or curative instruction.

**{33}** While discussing Alvarez's testimony, the State argued that "Defendant placed a lot

of weight on the fact that [she] couldn't remember details. I would proffer to you that she had a good recollection. She testified credibly, and she told you that." Defendant objected, and the district court sustained the objection, stating that "[t]he jurors get to . . . determine the credibility of each witness." However, Defendant did not request a mistrial or curative instruction in response to this comment. In the absence of such a request, or a demonstration that prejudice resulted, the district court's response to Defendant's objection was sufficient to cure the error. *See In re Crystal L.*, 2002-NMCA-063, ¶ 19, 132 N.M. 349, 48 P.3d 87 (finding the appellant was not entitled to relief on appeal when the district court sustained the appellant's objection to improper comments during closing argument, but the appellant did not request additional relief at trial and failed to demonstrate prejudice on appeal).

**{34}**    The district court did not abuse its discretion in denying Defendant's request for a mistrial or err in its treatment of any of the specific comments raised on appeal. Defendant is not entitled to his requested relief.

**Shotgun Jury Instruction**

**{35}**    Defendant argues that the district court issued an impermissible shotgun jury instruction. Defendant did not preserve this argument for appeal. We therefore review for fundamental error only. *See State v. Barber*, 2004-NMSC-019, ¶ 8, 135 N.M. 621, 92 P.3d 633 (holding that appellate courts review unpreserved questions for fundamental error); *see also Cunningham*, 2000-NMSC-009, ¶ 21 (describing the burden placed on parties alleging fundamental error).

**{36}**    The use of a shotgun jury instruction is prohibited due to the "potentially coercive effect it has on holdout jurors to abandon their convictions to arrive at a verdict with the majority." *State v. Laney*, 2003-NMCA-144, ¶ 52, 134 N.M. 648, 81 P.3d 591. In *State v. Rickerson*, our Supreme Court outlined three factors that determine whether communication between the district court and the jury related to the jury's deliberations is coercive. 1981-NMSC-036, ¶ 4, 95 N.M. 666, 625 P.2d 1183. These factors are "(a) whether any additional instruction or instructions . . . were given[,] (b) whether the court failed to caution a jury not to surrender honest convictions, thus pressuring holdout jurors to conform, and (c) whether the court established time limits on further deliberations with the threat of a mistrial." *Id.* Although *Rickerson* reviewed the propriety of an inquiry by the district court into the numerical division of the jury—a circumstance not at issue here—the circumstances of this case justify application of the same multi-factor test. In applying the *Rickerson* test, we consider both the district court's actions and the circumstances under which such actions arose. *Laney*, 2003-NMCA-144, ¶ 56.

**{37}**    The jury received the case on Friday at approximately 4:00 p.m. At 5:10 p.m., the district court called the jury to the courtroom to discuss its progress toward a verdict and to relay logistical concerns with allowing deliberations to continue. The district court instructed the jury that it could deliberate for twenty more minutes and, if it did not reach a verdict, deliberations would resume on the following Monday. The jury returned a verdict within the allotted time.

**{38}** Defendant argues that the prospect of returning on Monday could have a coercive effect on the jurors. Under the circumstances of this case, we cannot agree. The temporal limitation established by the district court applied only to that particular day and arose from logistical concerns, rather than deliberative ones. The district court expressly stated:

> I don't mean to rush you, and I'm not telling you to come back with a verdict, I just need a point where I have to say enough is enough and you need to . . . come back on Monday. I don't want a quick verdict. I don't mean to rush you. You can have all the time you need on Monday[.]

While we recognize that the average juror might be disinclined to return to jury service following the weekend, the district court's conduct in no way "pressur[ed] holdout jurors to conform" or "established time limits on further deliberations with the threat of a mistrial." *Rickerson*, 1981-NMSC-036, ¶ 4. In the absence of such coercion, Defendant has not suffered "fundamental unfairness" requiring reversal. *Cunningham*, 2000-NMSC-009, ¶ 21.

**Sufficiency of the Evidence**

**{39}** Finally, Defendant argues that substantial evidence does not support a finding that Woodard was a peace officer as defined by statute. "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Duran*, 2006-NMSC-035, ¶ 5, 140 N.M. 94, 140 P.3d 515 (internal quotation marks and citation omitted). Appellate courts "view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *Id.* (internal quotation marks and citation omitted).

**{40}** Section 30-22-24 prohibits battery upon a peace officer. A corrections officer, or "jailer," is a peace officer under the statute. *See State v. Rhea*, 1980-NMSC-033, ¶ 5, 94 N.M. 168, 608 P.2d 144 ("We hold that the Legislature did not exclude jailers from its definition of peace officers. A jailer is an officer in the public domain, charged with the duty to maintain public order.").

**{41}** Woodard testified that he was a corrections officer employed by MDC. Woodard's testimony is substantial evidence that he is a peace officer under the statute. Defendant's argument is not well-taken.

**PROBATION REVOCATION HEARING**

**{42}** Defendant argues that the district court violated his procedural due process rights by admitting drug test results in violation of protocol established in *State v. Sanchez*, 2001-NMCA-060, ¶ 17, 130 N.M. 602, 28 P.3d 1143. This Court reviews due process claims de novo. *State v. Gutierrez*, 2015-NMCA-082, ¶ 23, 355 P.3d 93. However, Defendant did not preserve this argument for appeal. We therefore review for fundamental error only. *See Barber*, 2004-NMSC-019, ¶ 8 (holding that appellate courts review unpreserved questions for fundamental error); *see also Cunningham*, 2000-NMSC-009, ¶ 21 (describing the burden

placed on parties alleging fundamental error).

**{43}** *Sanchez* established that defendants are entitled to minimum due process rights in probation revocation hearings. 2001-NMCA-060, ¶ 13. In cases involving a positive drug test, the defendant must receive a copy of the relevant laboratory test at least five days prior to the hearing. *Id.* ¶ 17.

**{44}** The State filed a notice of compliance with the *Sanchez* protocol on January 5, 2015. Defendant does not direct this Court to any evidence indicating that he did not receive this notice and the associated litigation packet or that the State otherwise violated the *Sanchez* protocol. *See Dominguez*, 2014-NMCA-064, ¶ 26 ("[W]e will not search the record to find facts to support [a defendant's] argument."). Under these circumstances, Defendant has not suffered "fundamental unfairness" requiring reversal. *Cunningham*, 2000-NMSC-009, ¶ 21.

## SENTENCING HEARINGS

**{45}** With respect to his sentencing hearings, Defendant argues that any of four alleged errors by the district court requires reversal of his sentencing enhancement. We address these arguments in turn.

### Double Jeopardy

**{46}** Defendant argues that the district court violated double jeopardy by subjecting him to retrial after ruling that the State's evidence was not sufficient to prove that he was the person convicted of the prior felonies as alleged in the supplemental criminal information. Questions related to double jeopardy protections are reviewed de novo and may be raised for the first time on appeal. *State v. Lopez*, 2008-NMCA-002, ¶ 12, 143 N.M. 274, 175 P.3d 942.

**{47}** The State cites various cases, including *State v. Linam*, 1979-NMSC-004, 93 N.M. 307, 600 P.2d 253; *State v. Aragon*, 1993-NMSC-054, 116 N.M. 267, 861 P.2d 948; and *State v. Freed*, 1996-NMCA-044, 121 N.M. 569, 915 P.2d 325, for the general principle that double jeopardy protections do not apply to habitual offender proceedings. We agree that "double jeopardy [protections] generally [do] not apply in . . . habitual offender proceedings" because the proceedings do not have "the hallmarks of a trial of guilt or innocence[.]" *Aragon*, 1993-NMSC-054, ¶¶ 11, 13.

**{48}** However, in the only New Mexico case to address Defendant's specific argument, our Supreme Court indicated that double jeopardy prohibits retrial after a ruling that the state's evidence was not sufficient to prove that the defendant was the person convicted of the prior felonies as alleged in the supplemental criminal information. *Koonsman v. State*, 1993-NMSC-052, ¶ 7 n.2, 116 N.M.112, 860 P.2d 754. In *Koonsman*, the defendant was convicted of a third degree felony in 1990. *Id.* ¶ 2. The state submitted a supplemental criminal information that alleged that the defendant had five prior felony convictions: two from 1960, two from 1966, and one from 1978. *Id.* The district court ruled that the defendant was the same person named in the 1966 and 1978 convictions but that "there was not

sufficient evidence of identity for the two 1960 convictions." *Id.* It sentenced the defendant as a habitual offender with three prior convictions. *Id.* The defendant appealed his sentencing enhancement, arguing that the sequencing of the crimes and convictions resulted in only two qualifying offenses under the statute. *Id.* ¶ 3. Our Supreme Court agreed and ruled that the defendant's conviction could only be enhanced by two prior convictions—in part because of the sequencing issue raised by the defendant and in part "because the [s]tate failed to prove that [the defendant] was the same defendant as the person named in the two 1960 convictions." *Id.* ¶ 7. It expanded upon its ruling in a footnote, stating:

> Although the court may resentence [the defendant] as a[] habitual offender with two prior convictions, . . . the [s]tate may not attempt to relitigate whether [the defendant] was indeed the person named in the 1960 convictions. A hearing already has been held on that issue and the [s]tate failed to provide sufficient evidence of [the defendant's] identity.

*Id.* ¶ 7 n.2 (citations omitted). Because neither party argued for retrial of the 1960 convictions, the footnote appears to be dictum. *See Kent Nowlin Constr. Co. v. Gutierrez*, 1982-NMSC-123, ¶ 8, 99 N.M. 389, 658 P.2d 1116 ("Dictum is unnecessary to the holding of a case and therefore is not binding as a rule of law."). Supreme Court dicta, however, has persuasive value. *See State v. Johnson*, 2001-NMSC-001, ¶ 16, 130 N.M. 6, 15 P.3d 1233 (holding that lower courts should give adequate deference to Supreme Court dicta). In Defendant's initial sentencing hearing, the State failed to introduce a certified copy of his fingerprint card from the current case, leading the district court to rule that the State's evidence was not sufficient to prove that Defendant was the person convicted of the prior felonies as alleged in the supplemental criminal information. However, to the extent that *Koonsman* suggests that the failure to introduce sufficient evidence of a defendant's identity in a habitual offender proceeding prohibits retrial, its persuasive value is negated by subsequent United States Supreme Court case law.

**{49}**   In 1988, the United States Supreme Court decided *Lockhart v. Nelson*. *Lockhart* interpreted Arkansas's habitual offender statute, which imposes sentencing enhancements following a fifth felony conviction. 488 U.S. at 34-35. The defendant was convicted of burglary, and the state introduced evidence of four prior felony convictions at his sentencing hearing. *Id.* at 36. The defendant testified that the governor had pardoned one of his prior convictions. *Id.* Despite this testimony, the jury concluded that the state proved that the defendant had four prior felony convictions and imposed an enhanced sentence. *Id.*

**{50}**   The defendant petitioned for a writ of habeas corpus, alleging that his sentence was invalid due to the alleged pardon. *Id.* at 37. The United States District Court ordered an investigation, which verified the defendant's claim. *Id.* The court declared the enhancement invalid and subsequently ruled that double jeopardy prohibited retrial of the defendant's habitual offender status. *Id.* When the state moved to retry the defendant as a habitual offender, the defendant responded that double jeopardy prohibited retrial. *Id.* The Eighth Circuit affirmed, holding that "the pardoned conviction was not admissible under state law, and that without it, the state has failed to provide sufficient evidence to sustain the enhanced sentence." *Id.* (alterations, internal quotation marks, and citation omitted). The United States

Supreme Court granted certiorari and reversed the Eighth Circuit. *Id.* In considering whether substantial evidence supported the jury's finding, it held that "where the evidence offered by the [s]tate and admitted by the trial court—whether erroneously or not—would have been sufficient to sustain a guilty verdict, the Double Jeopardy Clause does not preclude retrial." *Id.* at 34. *Lockhart* left open the issue of whether the state's complete failure to introduce sufficient evidence would preclude retrial of a defendant's habitual offender status.

**{51}** The United States Supreme Court revisited the issue in *Monge v. California*. *Monge* interpreted California's "three-strikes" law, which subjects defendants to sentencing enhancement if they have at least one previous conviction for a "serious felony." 524 U.S. at 724. At the defendant's "three-strikes" hearing, the state alleged that his qualifying conviction was for assault with a deadly weapon—specifically, a stick. *Id.* at 725. The state did not, however, offer any substantive evidence that the defendant "personally used a dangerous or deadly weapon during the assault" as required to qualify as a "serious felony." *Id.* at 724-25. Despite this evidentiary deficiency, the trial court enhanced the defendant's sentence under the "three-strikes" law. *Id.* at 725.

**{52}** The California Court of Appeal concluded that insufficient evidence supported the sentencing enhancement and that double jeopardy prohibited retrial. *Id.* at 725-26. The California Supreme Court reversed, and the United States Supreme Court granted certiorari. *Id.* at 726-27. It first outlined the historical rationale underlying double jeopardy protections, stating that double jeopardy "protects against successive prosecutions for the same offense after acquittal or conviction and against multiple criminal punishments for the same offense." *Id.* at 727-28. Then, turning to sentencing proceedings, it held:

> Sentencing decisions favorable to the defendant . . . cannot generally be analogized to an acquittal. We have held that where an appeals court overturns a conviction on the ground that the prosecution proffered insufficient evidence of guilt, that finding is comparable to an acquittal, and the Double Jeopardy Clause precludes a second trial. *Where a similar failure of proof occurs in a sentencing proceeding, however, the analogy is inapt.* The pronouncement of sentence simply does not have the qualities of constitutional finality that attend an acquittal.

*Id.* at 729 (emphasis added) (internal quotation marks and citations omitted). By holding that insufficient evidence is never a bar to the retrial of a defendant's status as a habitual offender, *Monge* resolved the issue left open in *Lockhart*. *Compare Bowman v. State*, 552 A.2d 1303, 1310 (Md. 1989) (holding, post-*Lockhart*, that insufficient evidence prohibits retrial in a habitual offender proceeding), *with Scott v. State*, 148 A.3d 72, 83-84 (Md. Ct. Spec. App. 2016) (departing from *Bowman* and holding, post-*Monge*, that insufficient evidence does not prohibit retrial in a habitual offender proceeding). Defendant does not argue that the New Mexico Constitution offers greater protection than the Federal Constitution. *See State v. Armendariz-Nunez*, 2012-NMCA-041, ¶ 5, 276 P.3d 963 ("Where [a state constitutional] provision has never before been addressed under our interstitial analysis, trial counsel . . . must argue that the state constitutional provision should provide greater protection [than its federal counterpart.]"). *Monge* therefore is the relevant precedent,

and the district court did not err in allowing the retrial of Defendant's habitual offender status.

**Due Process Violation**

**{53}**    Defendant also argues that the district court violated his due process rights by allowing the State to proceed with a subsequent sentencing hearing without proper notice. This Court reviews due process claims de novo. *Gutierrez*, 2015-NMCA-082, ¶ 23. However, Defendant did not preserve this argument for appeal. We therefore review for fundamental error only. *See Barber*, 2004-NMSC-019, ¶ 8 (holding that appellate courts review unpreserved questions for fundamental error); *see also Cunningham*, 2000-NMSC-009, ¶ 21(describing the burden placed on parties alleging fundamental error).

**{54}**    In order to subject a defendant to a statutory sentencing enhancement, due process requires that the defendant "be given notice that enhancement of sentence is sought by a pleading filed by the [s]tate and an opportunity to be heard before an increased penalty can be imposed." *State v. Santillanes*, 1981-NMSC-064, ¶ 5, 96 N.M. 477, 632 P.2d 354 (citing *State v. Rhodes*, 1966-NMSC-064, ¶ 11, 76 N.M. 177, 413 P.2d 214). This standard applies to various statutory sentencing enhancement schemes. *See, e.g.*, *Caristo v. Sullivan*, 1991-NMSC-088, ¶¶ 41-44, 112 N.M. 623, 818 P.2d 401 (applying the *Rhodes* due process analysis to a sentencing enhancement predicated upon a finding of aggravating circumstances).

**{55}**    In *State v. Godoy*, the state sought to enhance the defendant's sentence pursuant to Section 31-18-17. *Godoy*, 2012-NMCA-084, ¶¶ 20-21, 284 P.3d 410. On appeal, the defendant claimed that the state's failure to "make a prima facie showing of his past convictions" constituted a due process violation because he "had no fair opportunity . . . to review and rebut the evidence of those past convictions." *Id.* ¶ 20. This Court summarized the notice provided to the defendant as follows:

> [The d]efendant was convicted on November 4, 2009. Eight days later, the [s]tate filed supplemental information alleging that [the d]efendant was a habitual offender subject to sentence enhancement. The document alleged previous convictions in Florida, Texas, and New Mexico. Four days later, the [s]tate served notice of its intent to seek an enhanced sentence[.]

*Id.* ¶ 24. In light of the procedural steps taken by the state, we concluded that it "provid[ed] adequate notice" to the defendant. *Id.* ¶ 25.

**{56}**    In the present case, Defendant was convicted on January 10, 2014. Four days later, the State filed a supplemental criminal information alleging that Defendant was a habitual offender subject to sentence enhancement. The supplemental criminal information alleged numerous previous felony convictions in the state of New Mexico. On February 10, 2014, the State requested a special setting for the purpose of conducting a habitual offender hearing. The State's request certified service to defense counsel on the same day.

**{57}** We have no doubt that these procedural steps constitute adequate notice under *Godoy* and other relevant cases. Our inquiry does not, however, end here. At Defendant's initial sentencing hearing, the district court denied the state's request for sentencing enhancement. The State then orally moved for a subsequent sentencing hearing but did not file a new supplemental criminal information. On December 16, 2014, Defendant filed a motion opposing retrial of his habitual offender status. In his motion, Defendant specifically noted that the district court scheduled (1) a probation violation hearing and (2) a sentencing hearing for January 20, 2015.

**{58}** Although the record proper does not clearly indicate the procedural steps taken to schedule these hearings, based upon the content of his December 16, 2014 motion, Defendant had actual notice that his probation violation and sentencing hearings were originally scheduled for January 20, 2015. *See Pollock v. Ramirez*, 1994-NMCA-011, ¶ 24, 117 N.M. 187, 870 P.2d 149 (" 'Actual notice' refers to information that was communicated directly to or received by a party."). Had Defendant properly preserved this issue at trial, our analysis might differ. However, because Defendant had actual notice that his probation violation and sentencing hearings were scheduled concurrently, this scheduling did not deprive him of "an opportunity to be heard before an increased penalty can be imposed." *Santillanes*, 1981-NMSC-064, ¶ 5. Additionally, Defendant does not direct this Court to any case law indicating that the State must file a new supplemental criminal information following a denied request in a habitual offender hearing. *See Godoy*, 2012-NMCA-084, ¶ 5 ("Where a party cites no authority to support an argument, we may assume no such authority exists."). Under these circumstances, Defendant has not suffered "fundamental unfairness" requiring reversal. *Cunningham*, 2000-NMSC-009, ¶ 21.

**Ineffective Assistance of Counsel**

**{59}** Defendant additionally argues that his trial counsel provided ineffective assistance of counsel by failing to object to the district court's concurrent scheduling of his probation violation and sentencing hearings. We disagree.

**{60}** "To establish ineffective assistance of counsel, a defendant must show: (1) counsel's performance was deficient, and (2) the deficient performance prejudiced the defense." *State v. Paredez*, 2004-NMSC-036, ¶ 13, 136 N.M. 533, 101 P.3d 799 (internal quotation marks and citation omitted). The absence of prejudice is sufficient to dispose of an ineffective assistance of counsel claim. *See State v. Martinez*, 2007-NMCA-160, ¶ 19, 143 N.M. 96, 173 P.3d 18 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, we need not consider whether counsel's performance was deficient.").

**{61}** Defendant neither specifically argues, nor provides record support for the proposition, that trial counsel's failure to object to the concurrent scheduling of his probation violation and sentencing hearings caused him prejudice. *See Muse v. Muse*, 2009-NMCA-003, ¶ 72, 145 N.M. 451, 200 P.3d 104 ("We will not search the record for facts, arguments, and rulings in order to support generalized arguments."). Defendant, therefore, has not met his burden of proof to establish ineffective assistance of counsel.

**Sufficiency of the Evidence**

**{62}** Finally, Defendant argues that the State's evidence was not sufficient to prove that Defendant was the person convicted of the prior felonies as alleged in the supplemental criminal information. Again, we disagree.

**{63}** "We review the sufficiency of the evidence presented in habitual offender proceedings under a substantial evidence standard of review." *State v. Bailey*, 2008-NMCA-084, ¶ 23, 144 N.M. 279, 186 P.3d 908. "Substantial evidence is that which is acceptable to a reasonable mind as adequate support for a conclusion." *State v. Sanchez*, 2001-NMCA-109, ¶ 14, 131 N.M. 355, 36 P.3d 446. Appellate courts "review the evidence in the light most favorable to the [s]tate, resolving all conflicts and indulging all permissible inferences to uphold [the] verdict[.]" *Id.* (internal quotation marks and citation omitted).

**{64}** The district court admitted certified copies of three fingerprint cards, which corresponded to arrests in 2004, 2008, and 2011, and contained Defendant's name, birth date, and social security number. The State's expert witness testified that the fingerprints on each certified card came from the same person. The district court also admitted certified copies of judgment and sentencing documents, which indicated that Defendant had qualifying convictions, and took judicial notice of Defendant's 2014 conviction. In light of the admitted evidence, the district court ruled that Defendant had three qualifying convictions and was subject to sentencing as a habitual offender.

**{65}** Defendant introduced no evidence to contradict the State's allegation that he was the individual identified in the supplemental criminal information. Drawing all inferences in favor of the ruling, the admitted evidence is sufficient to support a finding that Defendant is a habitual offender under Section 31-18-17.

**CONCLUSION**

**{66}** Having concluded that Defendant's arguments are without merit, we affirm.

**{67}** **IT IS SO ORDERED.**

_____
**JAMES J. WECHSLER, Judge**

**WE CONCUR:**

_____
**LINDA M. VANZI, Chief Judge**

_____
**M. MONICA ZAMORA, Judge**