This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-34825**

**STATE OF NEW MEXICO,**

> Plaintiff-Appellee,

**v.**

**ARMANDO RODRIGUEZ,**

> Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF EDDY COUNTY**
**Raymond L. Romero, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Walter Hart, Assistant Attorney General
Albuquerque, NM

for Appellee

Law Offices of Jennifer J. Wernersbach, P.C.
Jennifer J. Wernersbach
Albuquerque, NM

for Appellant

### MEMORANDUM OPINION

**BOGARDUS, Judge.**

**{1}** Defendant Armando Rodriguez appeals from his conviction by a jury of possession of a firearm or destructive device by a felon, contrary to NMSA 1978, Section 30-7-16 (2001, amended 2019).[1] Defendant makes the following claims on appeal: (1) the district court abused its discretion in not declaring a mistrial or excluding

---

1All references to Section 30-7-16 in this opinion are to the 2001 version of the statute.

witnesses who violated the sequestration order; (2) the prosecutor made improper statements during closing argument; (3) the State's failure to submit the gun for fingerprint or DNA analysis deprived Defendant of exculpatory evidence; and (4) cumulative error deprived Defendant of a fair trial. Unpersuaded, we affirm.

## BACKGROUND

**{2}**　Defendant, a convicted felon, and another man, who were both intoxicated, joined a small bonfire party in the backyard of a home. Defendant was seen handing a gun to the other man when they first arrived. Shortly thereafter, an altercation ensued and Defendant was told to leave. Defendant was again seen holding a gun as he left the party and threatened to shoot. When the police arrived, Defendant and the other man were sitting in the cab of a pick-up truck. Officers later found a gun under the passenger seat of the truck.

**{3}**　The State charged Defendant with possession of a firearm or destructive device by a felon (the possession charge), contrary to Section 30-7-16; negligent use of a deadly weapon (intoxication), contrary to NMSA 1978, Section 30-7-4(A)(2) (1993); and battery, contrary to NMSA 1978, Section 30-3-4 (1963). The district court granted Defendant's motion to sever the possession charge.

**{4}**　Defendant was convicted of the possession charge that is the subject of this appeal. Because this is a memorandum opinion and the parties are familiar with the facts and procedural history of the case, we only discuss additional facts as are necessary to our disposition of the case.

## DISCUSSION

### I.　The Sequestration Order

**{5}**　During voir dire, the State's four civilian witnesses (witnesses)—family members who were at the party—were brought in front of the prospective jurors for identification. Before the witnesses left the courtroom, the district court invoked Rule 11-615 NMRA and instructed the witnesses, in the presence of the counsel for both parties, that they were not to talk with each other about the case, the testimony they were going to give, or the testimony they had given once they had testified. The district court further instructed these witnesses that they could speak to the attorneys involved in the case, but if they did so, to "please make sure that is done outside of the hearing of the other witnesses." The parties continued voir dire, and the court empaneled a jury. After the parties presented their opening statements, the district court recessed for lunch.

**{6}**　Upon returning from lunch, defense counsel told the district court that he had seen the prosecutor and the State's witnesses in a witness room together during the lunch break. Defense counsel reported that it appeared that they were discussing previously undisclosed photographs of the gun Defendant was accused of possessing.

Defense counsel reported watching several minutes of conversation. Defense counsel then moved the court to exclude the witnesses.

**{7}** The prosecutor stated in response, "Clearly, I have made a mistake." However, the prosecutor indicated that he was not aware that he could not ask the witnesses questions in the presence of one another. The prosecutor reported that the witnesses were not conferring with one another, but could hear each other's answers to the questions asked of each. The prosecutor admitted that the questions were substantive.

**{8}** The district court noted that it "very clearly admonished the witnesses and indicated to the attorneys that it was their duty to ensure that there was compliance with the rule." The court concluded that the prosecutor violated its admonishment and invocation of the sequestration rule. To remedy the violation, the district court decided that Defendant would be allowed to cross examine each of the witnesses as to whether they were in the room together discussing the case and what specifically they were discussing.

**{9}** Defendant moved for a mistrial. The district court denied both that motion and one to have the prosecutor made a witness indicating that there was no way to undo what had already been done—the witnesses had already been in a position to hear each other say whatever they had said in the witness room. Therefore, the district court reasoned that the only effective remedy would be to bring out the information about the meeting in front of the jury, which then could use that information in assessing the witnesses' credibility.

**{10}** On appeal, Defendant argues that the prosecutor's failure to comply with the sequestration order violated Rule 11-615 and constituted prosecutorial misconduct. Defendant contends that the only sufficient remedies would have been exclusion of the State's witnesses or declaration of a mistrial. Defendant argues that reversal of his conviction is required under either theory.

**{11}** Rule 11-615 allows a district court to, on its own, "order witnesses excluded so that they cannot hear other witnesses' testimony[.]" "The purpose of [Rule] 11-615 is to prevent witnesses from tailoring their testimony to the testimony of other witnesses." *State v. Ruiz*, 1995-NMCA-007, ¶ 22, 119 N.M. 515, 892 P.2d 962. "When a violation of [Rule 11-615] occurs, the choice of remedy is within the sound discretion of the [district] court." *State v. Reynolds*, 1990-NMCA-122, ¶ 28, 111 N.M. 263, 804 P.2d 1082. "[A]lthough a mistrial is a possible remedy for a violation of Rule 11-615, other potential remedies include striking testimony, citing for contempt, instructing the jury, permitting examination of the witnesses by counsel concerning how their testimony may have been tainted, and permitting argument by counsel." *State v. Salas*, 2017-NMCA-057, ¶ 20, 400 P.3d 251 (internal quotation marks and citation omitted). "Generally, it is unnecessary to prohibit the tainted witness from testifying." *Reynolds*, 1990-NMCA-122, ¶ 28. "Permitting a witness to testify who ha[s] violated the rule is within the discretion of the [district] court." *State v. Simonson*, 1983-NMSC-075, ¶ 25, 100 N.M. 297, 669 P.2d 1092. "The district court has broad discretion under Rule 11-615 and we will not disturb

the decision of the [district] court absent a clear abuse of this discretion and prejudice to the complaining party." *State v. Shirley*, 2007-NMCA-137, ¶ 33, 142 N.M. 765, 170 P.3d 1003 (alteration, internal quotation marks, and citation omitted). "A district court abuses its discretion if its ruling is clearly against the logic and effect of the facts and circumstances before the court." *Salas*, 2017-NMCA-057, ¶ 11 (internal quotation marks and citation omitted).

**{12}** From the discussion that the district court had with the prosecutor out of the presence of the jury, the district court had to determine "[w]hether the violation was deliberate or inadvertent, or whether such a violation was condoned by counsel[.]" *State v. Barboa*, 1973-NMCA-025, ¶ 14, 84 N.M. 675, 506 P.2d 1222. With that knowledge, the district court granted Defendant a remedy that is one of a number of acceptable remedies for violations of the rule. *See Salas*, 2017-NMCA-057, ¶ 20 (recognizing that the district court can allow "examination of the witnesses by counsel concerning how their testimony may have been tainted" as a remedy for a Rule 11-615 violation).

**{13}** Defendant has failed to identify any prejudice that he suffered by the district court allowing the witnesses to testify beyond the "inherent prejudice . . . that witnesses would testify based not on their independent memories, but on those memories as enhanced by others." *See Ruiz*, 1995-NMCA-007, ¶ 22. To remedy that prejudice, the district court allowed Defendant to cross-examine the witnesses regarding the meeting and what occurred therein.

**{14}** Defendant cross-examined only two of the witnesses who met with prosecutor during lunch.[2] They both testified as to what occurred during the lunch meeting. Both attended the lunch meeting with the two other witnesses and were able to hear the substance of each witness's expected testimony. The prosecutor asked the witnesses to describe the gun before they were shown a picture of a gun that matched the description. Nobody invented details or changed their "stories" based on what was discussed during the meeting. The jury was free to accept or reject the explanations and to determine the credibility of the witnesses involved.

**{15}** We cannot say that the district court's choice of remedy was "clearly against the logic and effect of the facts and circumstances before the court." *Salas*, 2017-NMCA-057, ¶ 11 (internal quotation marks and citation omitted). Nor can we say that Defendant suffered prejudice because of the district court's ruling. Furthermore, in light of the evidence of Defendant's guilt, we cannot conclude that the "prosecutor's misconduct had such a pervasive and prejudicial effect on the jury's verdict that [D]efendant was deprived of a fair trial" as Defendant suggests.

**{16}** Our conclusion is confined by our standard of review. Nothing in this opinion should be read to condone the behavior of the prosecutor in this case. All counsel are expected to follow the instructions of the court and to seek guidance if those instructions are in any way unclear.

---

2Defense counsel chose not to cross-examine the two other witnesses about the meeting.

## II.    The State's Closing Argument

**{17}**    Defendant claims that during closing argument the prosecutor improperly commented on Defendant's truthfulness, misstated the burden of proof, and "generally argu[ed] in a manner designed to appeal to sentiment and passion[.]" Because Defendant did not object to any of the prosecutor's comments during closing arguments, we review for fundamental error. *State v. Sosa*, 2009-NMSC-056, ¶ 26, 147 N.M. 351, 223 P.2d 348. "Prosecutorial misconduct rises to the level of fundamental error when it is so egregious and had such a persuasive and prejudicial effect on the jury's verdict that the defendant was deprived of a fair trial." *State v. Allen*, 2000-NMSC-002, ¶ 95, 128 N.M. 482, 994 P.2d 728 (internal quotation marks and citation omitted).

### A.    Defendant's Truthfulness

**{18}**    Defendant argues that the prosecutor's argument in closing was improper because he "referr[ed] to [Defendant] as a liar and inferr[ed] that he passed the polygraph because he was a good liar." Defendant also suggests that the prosecutor's argument that Defendant should not be believed "because he drunkenly hopped a fence to crash a party amounted to the prosecutor's personal attack on [Defendant] rather than highlighting evidence that would shed light on credibility."

**{19}**    Here, Defendant introduced evidence of a polygraph examination that found he answered truthfully when responding that he had not handled the gun, did not know there was a gun in the truck, and that the gun was never in his hands on that night. In response, the prosecutor argued by inference during closing argument that the polygraph results, which the polygrapher testified are based on bodily reactions to stress and uncomfortable situations, could be explained by Defendant being a good liar as evidenced by his bodily reactions while testifying. We cannot say such a responsive argument is improper. *See State v. Aguilar*, 1994-NMSC-046, ¶ 22, 117 N.M. 501, 873 P.2d 247 ("Prosecutors may comment on [a] witness's veracity as long as a personal opinion is not expressed and as long as the comments are not intended to incite the passion of the jury."). Additionally, even if we were to assume the prosecutor's commentary on Defendant drunkenly hopping a fence as it related to credibility was improper, we cannot conclude that this isolated statement resulted in such prejudice that it denied Defendant a fair trial in light of the evidence of his guilt. *See Allen*, 2000-NMSC-002, ¶ 95 ("An isolated, minor impropriety ordinarily is not sufficient to warrant reversal because a fair trial is not necessarily a perfect one." (internal quotation marks and citations omitted)). Therefore, we conclude that any error that may have resulted does not rise to the level of fundamental error.

### B.    Burden of Proof

**{20}**    Defendant argues that "[i]t was a misstatement of the law and improper for the prosecutor to argue in closing that in order to find reasonable doubt, the jury would have to believe that the four witnesses were blatantly lying or hallucinating." *See State v. Diaz*, 1983-NMCA-091, ¶ 18, 100 N.M. 210, 668 P.2d 326 ("Counsel may not misstate

the law."). Defendant further argues that the same comments improperly shifted the burden. We are not persuaded.

**{21}** Our Supreme Court has recognized that "[i]f after a case is presented, the evidence is essentially reduced to which of two conflicting stories is true, a party may reasonably infer, and thus argue, that the other side is lying." *Aguilar*, 1994-NMSC-046, ¶ 23. Such a scenario was present in this case. Defendant's testimony directly conflicted with the testimony of the State's witnesses who were present at the bonfire party. Defendant said that he was invited before jumping the fence; all of the State's witnesses stated that Defendant was not invited. Defendant testified that he was not intoxicated upon arrival; three of the State's witnesses testified that Defendant was intoxicated when he arrived. Defendant testified that he never heard or saw a firearm that night; the State's witnesses each testified to seeing and/or hearing a gun. Based on these examples of the contradictory testimony, we disagree that the prosecutor's argument misstated the law or improperly shifted the burden of proof as Defendant suggests. Accordingly, these statements did not constitute fundamental error.

## III.    Testing of the Firearm

**{22}** Defendant argues that the State's failure to submit the firearm for fingerprint or DNA analysis deprived him of exculpatory evidence that would have tended to show that he did not handle the firearm. In support of this argument, Defendant relies exclusively on *State v. Ware*, 1994-NMSC-091, 118 N.M. 319, 881 P.2d 679.

**{23}** In *Ware*, our Supreme Court identified "three general circumstances that give rise to a claim that the [s]tate violated a criminal defendant's right to due process by failing to provide evidence to the defense which is within, or potentially within, the [s]tate's purview." *Id.* ¶ 14 (alteration, internal quotation marks, and citation omitted). The first is when the state "collect[s] and preserv[es] evidence from the crime scene only to withhold evidence when the defendant requests it, or when it otherwise becomes material to the defense." *Id.* (internal quotation marks and citation omitted). The second is "when the [s]tate destroys, loses, or fails to preserve evidence that has previously been collected during the investigation of the crime." *Id.* ¶ 15. The third is "when the [s]tate fails to collect evidence from the crime scene in the first place." *Id.* ¶ 16.

**{24}** The Court in *Ware* was analyzing circumstances that fell within the third category—failure to collect evidence from the crime scene. *Id.* ¶¶ 23-28. The Court adopted "a two-part test for deciding whether to sanction the [s]tate when police fail to gather evidence from the crime scene." *Id.* ¶ 25. First, the evidence must be material to the defense, meaning that "there is a reasonable probability that, had the evidence been available to the defense, the result of the proceeding would have been different." *Id.* (internal quotation marks and citation omitted). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* (internal quotation marks and citation omitted). Second, if the defense has demonstrated materiality, the court then considers "the conduct of the investigating officers[.]" *Id.* ¶ 26.

**{25}** Here, Defendant relies exclusively on his unsupported assertions that fingerprint or DNA evidence would have been favorable to him. These self-serving statements are insufficient in light of the other facts that were in front of the jury. Two of the State's witnesses testified that they saw Defendant in possession of the gun; therefore, the evidentiary value of the gun, and any fingerprints or DNA evidence contained on it, is lessened. Furthermore, it is just as likely that any fingerprint or DNA evidence would have been cumulative of the witness testimony. Therefore, Defendant has failed to establish materiality, and we need not address the second prong of the *Ware* test. *See id.* ¶¶ 25-26 (stating that materiality is a "threshold matter" and that the investigating officer's conduct is considered only "[i]f the evidence is material to the defendant's defense"). We also note that the State did not deny Defendant access to the gun for testing by his own experts. We therefore perceive no error, let alone fundamental error.

## IV.     Cumulative Error

**{26}** As a final argument, Defendant contends that cumulative error deprived him of a fair trial. "The doctrine of cumulative error applies when multiple errors, which by themselves do not constitute reversible error, are so serious in the aggregate that they cumulatively deprive the defendant of a fair trial." *State v. Maxwell*, 2016-NMCA-082, ¶ 32, 384 P.2d 116 (internal quotation marks and citation omitted). For the reasons discussed in the preceding sections, and because we have concluded that Defendant was not deprived of a fair trial, his cumulative error claim fails. *See State v. Martin*, 1984-NMSC-077, ¶ 17, 101 N.M. 595, 686 P.2d 937 ("The doctrine [of cumulative error] cannot be invoked if no irregularities occurred or if the record as a whole demonstrates that a defendant received a fair trial." (citations omitted)).

## CONCLUSION

**{27}** For the foregoing reasons, we affirm Defendant's conviction.

**{28}   IT IS SO ORDERED.**

**KRISTINA BOGARDUS, Judge**

**WE CONCUR:**

**LINDA M. VANZI, Judge**

**ZACHARY A. IVES, Judge**